#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY L. BOYER, | : | |
| | : | |
| Plaintiff | : | Civil Action No. |
| v. | : | |
| | : | |
| GETTYSBURG OPHTHALMOLOGY ASSOCIATES, P.C., | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant | : | |

## COMPLAINT

## PARTIES

1. Plaintiff, Stacy L. Boyer ("Ms. Boyer" or "Plaintiff"), is an adult individual residing at 64 Holly Court, East Berlin, PA 17316.

2. Defendant, Gettysburg Ophthalmology Associates ("GOA" or "Defendant") is a Pennsylvania professional corporation doing business at 455 S. Washington Street, Suite 24, Gettysburg, PA 17325.

3. At all relevant times, GOA employed 15 or more persons when the unlawful actions alleged in this Complaint occurred.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action because Ms. Boyer's claims arise under Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*, as amended ("ADA").

5. This is a civil action involving claims in excess of $75,000, exclusive of interest and costs. Jurisdiction is based on 28 U.S.C. §1331 (federal question).

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. §1367(a).

7. Ms. Boyer exhausted her administrative remedies by filing a complaint against Defendant with the Pennsylvania Human Relations Commission ("PHRC") at Case No 202200251, which was dual filed with the Equal Employment Opportunity Commission ("EEOC") at Charge No. 17F202261226.

8. Ms. Boyer received the EEOC's notice of right to sue fewer than 90 days before her filing of this complaint.

9. Venue over this action lies with the United States District Court for the Middle District of Pennsylvania.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10. In April 2013, Ms. Boyer was hired as an Ophthalmic Technician. After several months, she voluntarily resigned, but was promptly re-hired by GOA in August 2014.

11. After three more years of excellent performance, she was promoted to Clinical Manager in June 2017.

12. Before she was wrongfully terminated in May 2022, Ms. Boyer received an annual salary of roughly $100,000 and sizable annual bonuses.

13. During her tenure with GOA, Ms. Boyer consistently received recognition for her good performance and had no disciplinary write-ups or adverse changes in her responsibilities until March 17, 2022, when she was informed that she no longer had the authority to hire or fire staff.

14. At all relevant times, Ms. Boyer was a member of a "protected class" and had a disability within the meaning of state and federal law including:

    (a) a physical and/or mental impairment that substantially limited one or more major life activities including, without limitation: General Anxiety Disorder and Depression;

    (b) a record of such impairment(s); and/or

    (c) being regarded as having such impairment(s).

15. At all relevant times, Defendant (including its owner/principal, Duane M. Whitlock, M.D., and Ms. Boyer's supervisor, Helen Reed) were aware of Ms. Boyer's disability.

16. On March 1, 2022, Ms. Boyer requested medical leave for mental health reasons which was supported by her primary care provider.

17. From March 2, 2022 to March 16, 2022, Defendant granted requested medical leave to Ms. Boyer.

18.  During her approved medical leave, Ms. Boyer contacted Helen Reed ("Mrs. Reed") on a frequent basis, answering questions and discussing possible disciplinary action against underperforming employees including Christy Fringer.

19.  On March 7, 2022, Ms. Boyer told Mrs. Reed that she planned to terminate Ms. Fringer.

20.  On March 7, 2022, Dr. Whitlock texted Ms. Boyer to "go watch a Hallmark movie and stop worrying about GOA, not good for your mental health."

21.  On March 10, 2022, Dr. Whitlock called Ms. Boyer concerning certain changes at work, with Dr. Whitlock's generally stating that he had "a plan" for Ms. Fringer and the clinical staff, which Ms. Boyer would find out about later.

22.  During such conversation, in response to Ms. Boyer's inquiry, Dr. Whitlock emphasized that "we won't talk about your current status."

23.  During such conversation, Ms. Boyer also informed Dr. Whitlock that she planned to consider Ms. Fringer's possible termination, asking him not to discuss discipline with Ms. Fringer because that would not be part of his customary responsibilities (disciplining other employees).

24.  On March 13, 2022, Mrs. Reed telephoned Ms. Boyer and informed her that she was not allowed to hire or fire other employees (as she had previously), thereby affecting the terms, conditions, and privileges of her employment.

25. On March 14, 2022, Ms. Boyer spoke with Mrs. Reed about how upset she was about Dr. Whitlock's making personnel decisions and not allowing her to discuss those decisions with him.

26. On March 17, 2022, Ms. Boyer returned to work on a full-time basis and was informed by Dr. Whitlock that she had not been demoted, but was not allowed to hire or fire employees (which was part of her previous job responsibilities).

27. Based on Ms. Boyer's recent mental health leave, Dr. Whitlock also opined that someone like Ms. Boyer under "that amount of stress can sometimes make poor decisions," suggesting it would be best to eliminate her previous job responsibility.

28. Dr. Whitlock also confirmed that firing Ms. Boyer never crossed his mind, emphasizing that Ms. Fringer was a negative person and the cause of the office's problems.

29. On March 20, 2022, Ms. Boyer had a three-way phone conference with Dr. Whitlock and Mrs. Reed about Tracey Keeling's performance review conference, during which Ms. Keeling became very upset with Ms. Boyer and said she was "so done with you." During their phone conference, Dr. Whitlock, Ms. Boyer, and Ms. Reed discussed possible disciplinary actions against Ms. Keeling.

30. In an email dated March 20, 2022, and directed to GOA, Ms. Keeling quit her job, stating "I apologize for my wording to your management during my evaluation. I should have been calm but I was not, and that is why I am handing in this resignation."

31. On March 21, 2022, Ms. Boyer sent Dr. Whitlock an email asking whether her job was in jeopardy and whether Dr. Whitlock felt that she could no longer do her job. Attached as **Exhibit P-1** is a copy of Ms. Boyer's email.

32. On March 22, 2022, Dr. Whitlock sent Ms. Boyer a text confirming that he wanted to talk with her again to address her "issues."

33. On March 22, 2022, Dr. Whitlock asked Ms. Boyer to investigate which current staff members might have posted résumés on Indeed.

34. On April 7, 2022, Ms. Fringer shared a five-page resignation letter with Dr. Whitlock.

35. In response, Dr. Whitlock told Ms. Fringer not to quit and to allow him investigate her concerns.

36. On April 11, 2022, Dr. Whitlock informed Ms. Boyer that she was being placed on a four-week administrative leave.

37. During such meeting on April 11, 2022, Dr. Whitlock provided Ms. Boyer with two separate letters, one of which was directed to all staff (including Ms. Boyer), and the other of which was directed to her individually. Attached as

**Exhibits P-2 and P-3**, respectively, are copies of Dr. Whitlock's letters dated April 10, 2022.

38. On April 20, 2022, Ms. Boyer sent an email to Mrs. Reed requesting review of her personnel file.

39. On April 21, 2022, Ms. Boyer sent Dr. Whitlock a lengthy email addressing her April 11, 2022, meeting with him and complaining about Defendant's discriminatory and retaliatory treatment of her. Attached as **Exhibit P-4** is a copy of Ms. Boyer's email.

40. By emails sent on April 22, 2022, Dr. Whitlock acknowledged Ms. Boyer's request to review her personnel file and attached an ADA form for completion by Ms. Boyer's treating physician, along with a letter responding to her April 21, 2022, letter. Attached as **Exhibit P-5** is a copy of Dr. Whitlock's undated letter.

41. On or about April 25, 2022, Ms. Boyer requested her job description be provided with the ADA form.

42. On May 4, 2022, Ms. Boyer inspected her personnel file and informed Mrs. Reed that certain documents were missing from her file including her email to Dr. Whitlock on March 21, 2022.

-8-

43. On May 6, 2022, Ms. Boyer emailed Mrs. Reed and requested that her paid time off be used until she was able to return her physician's completed ADA form.

44. On May 9, 2022, Mrs. Reed confirmed that Ms. Boyer could use her PTO until the completion and delivery of the ADA form.

45. On May 10, 2022, Ms. Boyer emailed Dr. Whitlock the ADA form completed by her physician. Attached as **Exhibit P-6** is a copy of the completed ADA form.

46. On May 12, 2022, Ms. Boyer emailed Dr. Whitlock, requesting an update on her employment status, to which he confirmed that he would be in touch with her.

47. On May 14, 2022, Dr. Whitlock requested that he meet with Ms. Boyer on either May 16 or May 17, to which she confirmed she would be able to meet on May 16.

48. On May 16, 2022, Dr. Whitlock met with Ms. Boyer and delivered to her a May 16, 2022, letter confirming the termination of her employment effective the same date (even though Dr. Whitlock had previously offered her a non-managerial position). Attached as **Exhibit P-7** is a copy of Dr. Whitlock's May 16, 2022, letter.

49. At all relevant times, Ms. Boyer was a qualified employee and was able to perform her essential job functions with or without accommodation.

50. At all relevant times, Ms. Boyer engaged in "protected activity" within the meaning of governing law including requesting accommodation and complaining that she was being discriminated and retaliated against due to her protected class (disability).

51. Defendant was aware of Ms. Boyer's protected disability class and protected activities and treated her less favorably than those employees who were not in her protected class.

52. Defendant discriminated against Ms. Boyer and retaliated against her after she engaged in protected activities.

53. Defendant failed to engage in an interactive process concerning the nature and extent of Ms. Boyer's disabilities and any needed accommodations.

54. Defendant created or permitted a hostile work environment and harassed Ms. Boyer on a severe or pervasive basis.

55. Defendant took pretextual, adverse action against Ms. Boyer including stripping her of certain job responsibilities, placing her on leave, demoting her, and terminating her (collectively, "Adverse Actions").

56. Defendant has no legitimate nondiscriminatory, nonretaliatory reason for taking adverse action against Ms. Boyer.

57. Defendant treated Ms. Boyer less favorably than other employees who requested accommodation.

## COUNT I
## DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE

58. Ms. Boyer incorporates by reference herein paragraphs 1 through 57 above.

59. Ms. Boyer's protected class is disabled/disability.

60. As alleged more fully above, GOA's Decision-makers refused to engage in an interactive process to explore accommodation and otherwise discriminated against her by Adverse Actions.

61. As a result of Defendant's unlawful conduct, Ms. Boyer has sustained lost wages, lost bonuses, lost retirement and employee benefits, medical expenses, front pay, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

62. As a further result of Defendant's unlawful conduct, Ms. Boyer has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

63. As a further result of Defendant's and its Decision-makers' acting with malice or reckless indifference to Ms. Boyer's federally protected rights, she is entitled to punitive damages in excess of $75,000, plus interest and costs.

64. Additionally, as a result of Defendant's unlawful conduct, Ms. Boyer is entitled to attorneys' fees in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Stacy L. Boyer, demands that judgment be entered in her favor and against Defendant, Gettysburg Ophthalmology Associates, P.C., including the following relief:

A. reinstatement to Ms. Boyer's prior position or a comparable position with Defendant;

B. compensation for back pay, front pay, lost retirement, medical expenses, and other lost employee compensation and benefits;

C. compensatory and any other authorized damages in amounts to be determined at trial;

D. attorneys' fees, costs, and interest; and

E. such other relief as the Court deems appropriate.

## COUNT II
## DISABILITY RETALIATION

65. Ms. Boyer incorporates by reference herein paragraphs 1 through 64 above.

66. As alleged more fully above, Ms. Boyer engaged in protected activities including requesting accommodation for her mental disabilities and complaining about discrimination and retaliation.

67. GOA's Decision-makers retaliated against Ms. Boyer after she engaged in protected activities including their illegitimate, pretextual Adverse Actions.

68. As a result of Defendant's unlawful conduct, Ms. Boyer has sustained lost wages, lost bonuses, lost retirement and employee benefits, medical expenses, front pay, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

69. As a further result of Defendant's unlawful conduct, Ms. Boyer has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

70. As a further result of Defendant's and its Decision-makers' acting with malice or reckless indifference to Ms. Boyer's federally protected rights, she is entitled to punitive damages in excess of $75,000, plus interest and costs.

71. Additionally, as a result of Defendant's unlawful conduct, Ms. Boyer is entitled to attorneys' fees in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Stacy L. Boyer, demands that judgment be entered in her favor and against Defendant, Gettysburg Ophthalmology Associates, P.C., including the following relief:

    A.    reinstatement to Ms. Boyer's prior position or a comparable position with Defendant;

    B.    compensation for back pay, front pay, lost retirement, medical expenses, and other lost employee compensation and benefits;

    C.    compensatory and any other authorized damages in amounts to be determined at trial;

    D.    attorneys' fees, costs, and interest; and

    E.    such other relief as the Court deems appropriate.

### COUNT III
### DISABILITY DISCRIMINATION
### (STATE-LAW CLAIM UNDER THE PHRA)
### *Boyer v. Defendant*

72. Ms. Boyer incorporates by reference herein paragraphs 1 through 71 above.

73. Ms. Boyer's protected class is disabled/handicapped.

74. As alleged more fully above, Defendant and its decision-makers discriminated against Ms. Boyer as a result of her mental health disabilities.

75. Based upon the foregoing, Defendant violated the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA").

76. As a result of Defendant's Adverse Actions, Ms. Boyer has sustained lost wages, lost benefits, bonuses, front pay, compensatory damages, attorneys' fees, and other unliquidated losses in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Stacy L. Boyer, demands that judgment be entered in her favor and against Defendant, Gettysburg Ophthalmology Associates, P.C., including the following relief:

A. reinstatement to Ms. Boyer's prior position with Defendant;

B. all other remedies and damages authorized by the PHRA in amounts in excess of $75,000, plus interest and costs; and

C. such other relief as the Court deems appropriate.

## COUNT IV
## DISABILITY RETALIATION
## (STATE-LAW CLAIM UNDER THE PHRA)
### *Boyer v. Defendant*

77. Ms. Boyer incorporates by reference herein paragraphs 1 through 76 above.

78. As alleged more fully above, Ms. Boyer engaged in protected activities by requesting accommodation and by complaining about disability discrimination and retaliation.

79. As alleged more fully above, Defendant and its decision-makers discriminated against Ms. Boyer and retaliated against her after she engaged in protected activities.

80. Based upon the foregoing, Defendant violated the Pennsylvania Human Relations Act, 43 P.S. §§951-963 ("PHRA").

81. As a result of Defendant's Adverse Actions, Ms. Boyer has sustained lost wages, lost benefits, bonuses, front pay, compensatory damages, attorneys' fees, and other unliquidated losses in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Stacy L. Boyer, demands that judgment be entered in her favor and against Defendant, Gettysburg Ophthalmology Associates, P.C., including the following relief:

A. reinstatement to Ms. Boyer's prior position with Defendant;

B. all other remedies and damages authorized by the PHRA in amounts in excess of $75,000, plus interest and costs; and

C. such other relief as the Court deems appropriate.

Respectfully submitted,

KEEFER WOOD ALLEN & RAHAL, LLP

Dated:  10/28/2024          By:   s/ Bradford Dorrance
                                  Bradford Dorrance, PA I.D. #32147
                                  417 Walnut Street, 3rd Floor
                                  Harrisburg, PA  17101
                                  bdorrance@keeferwood.com
                                  (717) 255-8014 (phone)

(Attorneys for Plaintiff)